585 So.2d 274 (1991)
ISLAND CITY FLYING SERVICE, Petitioner,
v.
GENERAL ELECTRIC CREDIT CORPORATION, Respondent.
No. 75103.
Supreme Court of Florida.
August 29, 1991.
Rehearing Denied December 5, 1991.
Peters, Pickle, Niemoeller, Robertson, Lax & Parsons, and Jeanne Heyward, Miami, for petitioner.
H.C. Palmer, III of McDonald & McDonald, Miami, for respondent.
OVERTON, Justice.
Island City Flying Service petitions this Court to review General Electric Credit Corp. v. Diezel, 551 So.2d 520 (Fla. 3d DCA 1989), in which the Third District Court of Appeal held that the evidence was sufficient for a jury to find Island City negligent in hiring Steve Diezel, who stole an airplane owned by General Electric Credit Corporation, and that Island City was not entitled to raise the defense of comparative negligence. We find conflict with our decision in Mallory v. O'Neil, 69 So.2d 313 (Fla. 1954), and with the Second District Court of Appeal's decisions in Garcia v. Duffy, 492 So.2d 435 (Fla. 2d DCA 1986), *275 and Williams v. Feather Sound, Inc., 386 So.2d 1238 (Fla. 2d DCA 1980), review denied, 392 So.2d 1374 (Fla. 1981).[1] For the reasons expressed below, we quash the decision of the Third District Court of Appeal.
This action commenced when General Electric filed suit against Steve Diezel and Island City, his employer, to recover damages arising out of Diezel's destruction of General Electric's twin-engine aircraft. At the time, General Electric owned the airplane and was leasing it to Southern Express Airways, a commuter airline serving Key West, Florida. Island City provided airport services at the Key West International Airport.
Island City first employed Diezel in 1984 to work in its maintenance shop. At the request of the company's owner, Island City's manager hired Diezel, who had been a friend of the owner's son for many years. Prior to his employment with Island City, Diezel had received a bad conduct discharge from the United States Army as a result of a drug offense. During his employment, Diezel learned how to start Island City's Navajo aircraft, which was similar to the Southern Express plane that he eventually stole. As part of the benefits of his employment, Diezel took flying lessons, but he had only twenty hours of experience and no pilot's license at the time of this incident. Also, all of his training was in a single-engine plane. During his employment with Island City, Diezel got into trouble for failing to ground airplanes while refueling, for taking a one-week leave of absence without permission, for being tardy, for allowing people to ride on the running board of the fuel truck, and for returning late from lunch. For some or all of these reasons, he was fired on two occasions, but he was almost immediately rehired.
Island City refueled planes from 8:00 a.m. to 6:00 p.m. After these hours, the company had a refueler on call. Diezel, who had no car, would spend the night at work when he was assigned as a refueler. He was not the assigned night refueler on the evening of this incident, January 16, 1985. On that day Diezel had worked until about 6:00 p.m., when the assigned night refueler took over. Two planes came in after 9:35 p.m. Diezel appeared at the airport on his bicycle at about the time the planes arrived. The assigned refueler let Diezel refuel the planes to make some extra money, since the night refuelers were allowed to collect a service charge of ten to fifteen dollars which they were allowed to keep. After refueling these two planes, Diezel, the assigned night refueler, and another individual left the airport after 10:00 p.m. to go to a bar at a nearby hotel. The evidence reflects that Diezel had a beer and three cocktails before he returned to the airport at around 1:00 a.m. to pick up his bicycle. The record further reflects that Diezel sat around for about an hour; then he walked through an unlocked pedestrian gate to the commercial ramp where the Southern Express plane was parked and, in his own words, "misappropriated the aircraft." The Southern Express plane was unlocked and no key was necessary to start the engines. Diezel could not maintain altitude and crashed in the ocean shortly after takeoff, destroying the plane. He survived and was charged with stealing the airplane, to which charge he entered a plea of guilty.
At the trial in the circuit court, Island City moved for a directed verdict on the grounds that the evidence failed to establish negligent hiring or retention of Diezel and that the evidence failed to show that the theft of the plane was in any way proximately caused by or foreseeable as a result of Diezel's failure to ground planes when refueling them and his alleged problems while in the military. The trial judge denied the motion. In submitting the case to the jury, the trial judge instructed it on comparative negligence over the objection of General Electric. The jury found Island City negligent in the hiring or retention action, but it also found General Electric 75% comparatively negligent because its lessee left the aircraft unlocked. The trial court entered a final judgment, reduced by *276 the 75% comparative negligence, in favor of General Electric.
On appeal, the Third District Court of Appeal affirmed the finding of liability for negligent hiring, stating that Island City
was negligent in hiring an employee who had a prior military prison record, and that therefore the defendant was liable for the theft of the plaintiff's aircraft... . [T]he jury on this record could have reasonably concluded, as it undoubtedly did, that such a theft was reasonably foreseeable by the defendant.
General Elec. Credit Corp. v. Diezel, 551 So.2d at 521. On rehearing, the district court modified its opinion by stating that "there was other evidence in the record to support the plaintiff's negligent hiring claim besides the employee's prior military prison record." Id. at 522. On the applicability of comparative negligence, the district court reversed the trial court, stating:

[T]he trial court committed reversible error in instructing the jury that the plaintiff, as the owner of the aircraft, was responsible for any comparative negligence of its lessee, Southern Express, in failing to lock the subject aircraft prior to its theft by the defendant's employee. We reach this result because (a) the employee-thief could not, himself, rely on the plaintiff's imputed comparative negligence for leaving the aircraft unlocked prior to the sued-upon theft, as comparative negligence is not a good defense to an intentional tort ... and (b) the defendant, by virtue of its negligent hiring of the aforesaid employee-thief, stands in the shoes of the said employee, being legally responsible for his act of theft, and therefore can no more avail it[self] of the owner's imputed comparative negligence than can the employee-thief.
Id. at 521 (emphasis added).
The first question we must resolve is whether Island City is liable for its negligent hiring or retention of Diezel under the facts established in this record. The Second District Court of Appeal, in its decision in Williams v. Feather Sound, Inc., 386 So.2d 1238 (Fla. 2d DCA 1980), review denied, 392 So.2d 1374 (Fla. 1981), articulated the legal principles for this type of action as follows:
Most jurisdictions, including Florida, recognize that independent of the doctrine of respondeat superior, an employer is liable for the willful tort of his employee committed against a third person if he knew or should have known that the employee was a threat to others. Many of these cases involve situations in which the employer was aware of the employee's propensity for violence prior to the time that he committed the tortious assault. The more difficult question, which this case presents, is what, if any, responsibility does the employer have to try to learn pertinent facts concerning his employee's character. Some courts hold the employer chargeable with the knowledge that he could have obtained upon reasonable investigation, while others seem to hold that an employer is only responsible for his actual prior knowledge of the employee's propensity for violence. The latter view appears to put a premium upon failing to make any inquiry whatsoever.
Id. at 1239-40 (footnotes omitted). In that case, the employee initially applied for a laborer's position involving outside maintenance duties. The application form did not contain any type of request for this applicant's past criminal or psychiatric history. Further, the employer did not ask whether he had ever been arrested, convicted, or placed on probation. The employee, after working as an outside laborer for three weeks, was moved to a job where he was responsible for providing interior maintenance, and, in the course of these duties, he was given pass keys to the condominium units. Subsequently, the employee entered one of the units in which he had previously worked, and he assaulted the owner. During the investigation of that crime, it was discovered that, prior to his employment with Feather Sound, the employee had pleaded guilty to breaking and entering and assault to commit murder in the second degree, had spent two and one-half months in a psychiatric hospital, and subsequently had pleaded guilty to a charge of night-prowling. *277 The court in Feather Sound noted that "in analyzing the employer's responsibility to check out an applicant's background, it is necessary to consider the type of work to be done by the prospective employee," id. at 1240, and it noted that, if the employee was going to be doing only outside work, the employer had no responsibility to make an independent inquiry concerning the employee's past. On the other hand, the court noted that the employer had a duty to make a reasonable inquiry about the employee's background before assigning him inside work and giving him access to the owners' condominium units. In remanding the case to the trial judge, the court stated:
[T]he ultimate question of liability to be decided will be whether it was reasonable for Feather Sound to permit Carter to perform his inside job in light of the information about him which Feather Sound should have known. Pertinent to this consideration is the fact that there are many persons in Florida with prior criminal records who are now good citizens. To say that an employer can never hire a person with a criminal record at the risk of being held liable for his tortious assault flies in the face of the premise that society must make a reasonable effort to rehabilitate those who have gone astray. At this point, we hold only that when Feather Sound permitted Carter to have access to the town-houses, Feather Sound was chargeable with such information concerning his background as it could have obtained upon reasonable inquiry.
Id. at 1241 (emphasis added).
It is clear in the instant case that the district court relied almost entirely on Diezel's military criminal record. We are concerned that the decision of the Third District will lead to the result that the Second District sought to avoid in Feather Sound, specifically, that an employer who hires a person with a criminal record will be at substantial risk of liability for any intentional tort of that employee because of that past criminal record, irrespective of its connection to the conduct in issue. In Feather Sound, the type of criminal offense for which the employee was previously convicted was the same as the offense that he committed against the owner of the condominium unit after his employer placed him in a position to commit that act by giving him a passkey. That type of connection and foreseeability is not present in the instant case. Island City had reprimanded Diezel for failing to ground airplanes when he refueled them, for being late, and for taking off from work without authority. While Diezel had a military criminal record of imprisonment for a drug offense, there is no showing that there was any imprisonment for theft. Further, we do not believe that this record establishes that it was foreseeable that this employee would take a joy ride in an easily identified commercial commuter plane that he had never flown before. Contrary to the finding of the district court of appeal, we find that, based on this record, Island City could not have foreseen Diezel's theft of this airplane.
We also find that the Third District Court of Appeal erroneously concluded that General Electric, as the owner of the aircraft, could not be responsible for any comparative negligence of its lessee. We expressly reject the assertions that comparative negligence is not applicable to this situation because this was an intentional tort by Island City's employee and that Island City, as the employer, stood in the shoes of its employee in this situation. This action was based on negligent hiring or retention, not on the vicarious liability of an employer for the intentional tort of an employee. When a plaintiff brings an action based on the negligence of a defendant, then that defendant is entitled to assert any negligence of the plaintiff concerning an incident in which the plaintiff's dangerous instrumentality is involved. Such negligence could include that of a lessee, which would apply vicariously to the lessor of a dangerous instrumentality. We find that, if the facts had justified a claim of negligence in the hiring or retention of Diezel, comparative negligence would properly apply. We reject General Electric's assertion that, as a lessor, it cannot be *278 responsible for any negligence of its lessee, Southern Express. We resolved that issue in our decision in Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363 (Fla. 1990). General Electric, as the owner of a dangerous instrumentality, is liable for any negligence of its lessee.
As noted, General Electric's suit against Island City was based on a theory of negligent hiring or retention. Unlike a suit based on the doctrine of respondeat superior, this cause of action is grounded upon the negligence of the employer. Mallory v. O'Neil, 69 So.2d 313 (Fla. 1954). In suits for negligence, the defendant is entitled to raise the defense of comparative negligence. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), modified on other grounds, First Am. Title Ins. Co. v. First Title Serv. Co., 457 So.2d 467 (Fla. 1984). Regardless of the dangerous instrumentality theory, it would be incongruous to permit General Electric to sue Island City in negligence and deprive Island City of the ability to assert the comparative negligence of Southern Express Airways, to whom the airplane had been entrusted by General Electric when it was stolen. It is irrelevant that Diezel, himself, could not assert the defense of comparative negligence because of having committed an intentional tort.
Accordingly, we quash the decision of the district court of appeal and remand this cause with directions that the trial court enter a judgment in favor of Island City.
It is so ordered.
SHAW, C.J., and McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution.