839 So.2d 709 (2003)
Fred O. DICKINSON, III, Jacqueline Gipson, Appellants,
v.
Marla E. GONZALEZ, Appellee.
Nos. 3D00-927, 3D00-923.
District Court of Appeal of Florida, Third District.
January 2, 2003.
Rehearing, Rehearing and/or Certification Denied March 7, 2003.
*710 Dittmar & Hauser and Helen Ann Hauser, Coconut Grove; Papy, Weissenborn, Poole & Vraspir and Sherry Weissenborn, for appellants.
Greenberg Traurig and Elliot H. Scherker, and Brenda K. Supple, Miami; Levine & Finger, for appellee.
Before COPE, GODERICH and SHEVIN, JJ.
Rehearing, Rehearing En Banc and/or Certification Denied March 7, 2003.
COPE, J.
This is an appeal from a damages judgment entered against the Florida Department of Highway Safety and Motor Vehicles, and a Highway Patrol Trooper, Jacqueline Gipson, for violation of civil rights under 42 U.S.C. section 1983, negligence, and false arrest. As the Department is not subject to suit under section 1983, we reverse that claim entirely. We *711 reverse the judgment on the remaining claims and remand for a new trial.

I.
Shortly after midnight on February 12, 1995, plaintiff-appellee Marla E. Gonzalez was traveling south bound on Interstate 95, after having attended an office function earlier that evening. By her account, the car in front of her slammed on its brakes. The plaintiff attempted to avoid the car but lost control, spinning and coming to rest facing northbound. The other car drove away.
City of Miami Police officers first arrived at the location of the accident, but relinquished the accident scene to Florida Highway Patrol ("FHP") Trooper Stephan Razik, who was the first FHP officer to arrive. According to Trooper Razik, the plaintiff did not know where she was, did not initially recognize her car, and gave him answers that were unrelated to his questions. Trooper Razik administered roadside sobriety tests to the plaintiff, which she passed. Based on her statements, however, he believed that she was under the influence of drugs.
Via radio, Trooper Razik requested that a trained drug recognition evaluator ("DRE") come to the accident scene. See generally Williams v. State, 710 So.2d 24 (Fla. 3d DCA 1998). FHP Trooper Jacqueline Gipson responded, accompanied Ariel Rojas, a City of Miami Police officer. Trooper Gipson was undergoing training to become a certified DRE. Officer Rojas was conducting the training and supervising her activities.[1]
The plaintiff suffers from bipolar disorder. It is clear from Trooper Gipson's written report that the plaintiff told the trooper this. The plaintiff told the trooper that she takes a medication for this disorder, Carbamazepin, which she had taken earlier in the evening at 9:00 p.m. The plaintiff had the prescription bottle of medication in her possession.
Trooper Razik told Trooper Gipson that the plaintiff admitted using cocaine earlier in the evening. Trooper Gipson's report stated that she observed a white residue under the plaintiff's nose. Trooper Gipson did not, however, take a swab of anything that she observed. Trooper Gipson's report indicated that the plaintiff stated she had two drinks of alcohol earlier in the evening.
Plaintiff testified that she never said she had used cocaine that evening, and in fact had not done so. She also testified that in answers to their questions about alcoholic beverages, she said she had two drinks the Saturday a week ago, and had not consumed alcohol on the evening in question.
Trooper Gipson concluded that the plaintiff was impaired, arrested her for driving under the influence ("DUI"), and took her to jail. Post-arrest chemical testing came up negative for cocaine and alcohol. The tests showed that the only substances she had consumed were the prescription medication, caffeine, and nicotine.
The State nolle prossed the DUI charge. The plaintiff pled no contest to careless driving, a non-criminal traffic offense.
The plaintiff brought suit against the Department of Highway Safety and Motor Vehicles (of which the FHP is a part), and among others, Troopers Gipson and Razik. The plaintiff alleged false arrest and violation of her civil rights under 42 U.S.C. section 1983. She also alleged that the Department was guilty of negligent retention and supervision of Trooper Gipson.
The jury returned a verdict against the Department for $200,000 for false arrest *712 and negligence, and $100,000 for the section 1983 claim. The jury returned a verdict against Trooper Gipson for false arrest in the amount of $50,000 with a punitive damage award of $250,000. The jury found no liability on the part of Trooper Razik, and returned a verdict in his favor.
The Department and Trooper Gipson have appealed.

II.
For the first time on appeal, the Department argues that a state agency cannot be held liable in damages for a violation of 42 U.S.C. section 1983. The Department's position is correct.
The Florida Highway Patrol is part of the Florida Department of Highway Safety and Motor Vehicles. Fred O. Dickinson, III, is the executive director of the Department. The plaintiff brought suit against Mr. Dickinson solely in his official capacity as head of the Florida Department of Highway Safety and Motor Vehicles.
Neither a state nor its officials acting in their official capacities can be sued for damages under 42 U.S.C. section 1983. Section 1983 provides in part:
Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983 (emphasis added).
After considering the language of the statute and its history, the United States Supreme Court has held "that neither a state nor its officials acting in their official capacities are `persons' under § 1983." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); 1 Sheldon H. Nahmod, Civil Rights and Civil Liberties Litigation §§ 1:16, 6:67 (4th ed.2002).
As a matter of law, therefore, there can be no section 1983 claim against the Department or against Mr. Dickinson in his official capacity as Executive Director of the Department. We therefore reverse the section 1983 portion of the judgment against Mr. Dickinson, which in reality is against the Department, and remand with directions to dismiss that claim.[2]
The plaintiff argues that the Department has waived this argument by failing to make it in the trial court. We disagree. Under our cases, it is fundamental error to impose compensatory damages on a nonexistent cause of action. See Security Bank, N.A. v. BellSouth Advertising & Pub. Corp., 679 So.2d 795, 803 (Fla. 3d DCA 1996), approved, 698 So.2d 254 (Fla.1997); Keyes Co. v. Sens, 382 So.2d 1273, 1276 (Fla. 3d DCA 1980).

III.
The Department argues that sovereign immunity bars an award against the Department based on false arrest. The Department points out that under part II of Trianon Park Condominium Ass'n, Inc. v. City of Hialeah, 468 So.2d 912 (Fla.1985), *713 there is sovereign immunity for discretionary decisions to enforce the law. See id. at 919-21.
While under Trianon the discretionary decision whether or not to make an arrest is exempt governmental tort liability, id. at 921, it nonetheless remains true that an arresting officer must have probable cause to make an arrest. The courts which have addressed the point have concluded, "There is no sovereign immunity for false arrest...." Lester v. City of Tavares, 603 So.2d 18, 19 (Fla. 5th DCA 1992); Maybin v. Thompson, 514 So.2d 1129 (Fla. 2d DCA 1987), see also Seguine v. City of Miami, 627 So.2d 14, 18 n. 2 (Fla. 3d DCA 1993).
Similarly, there is no sovereign immunity barrier to making a claim against a governmental agency for negligent retention or supervision. See Willis v. Dade County School Board, 411 So.2d 245, 246 (Fla. 3d DCA 1982). We therefore reject the Department's arguments on this point.

IV.
The Department and Trooper Gipson both argue that Trooper Gipson's internal affairs file should not have been introduced into evidence. Trooper Gipson argues alternatively that if the file was properly admitted into evidence, then she was entitled to a bifurcation of the trial because the internal affairs file was not admissible against her. Because these arguments are well taken, we remand for a new trial.
Shortly before trial, the FHP produced Trooper Gipson's internal affairs file to the plaintiff. This consisted of an extensive disciplinary history between 1990 and 1997, when Trooper Gipson resigned instead of being fired. The file disclosed that the local FHP office had previously tried to fire Trooper Gipson, but the recommendation for termination had been overruled by the Tallahassee headquarters.
The plaintiff called as witnesses four FHP internal affairs officers who testified regarding their various investigations of Trooper Gipson. While Trooper Gipson indeed had a serious disciplinary history, none of her prior infractions had to do with DUI arrests or roadside stops. The plaintiff made Trooper Gipson's disciplinary history a feature of the case. The Plaintiff used at least half of her lengthy closing argument to discuss Trooper Gipson's prior disciplinary history.
Trooper Gipson's employment history was offered on the theory that it was relevant to the plaintiff's claim that the Department had been negligent in retaining Trooper Gipson on the force, and in supervising her. The prior employment history of an employee can be considered on such issues if relevant.
The Florida Supreme Court discussed this issue in Island City Flying Service v. General Electric Credit Corp., 585 So.2d 274 (Fla.1991). Island City was a company which provided airport services, such as refueling and storing of aircraft. An employee, Diezel, took an aircraft for an unauthorized joy ride and crashed it. One of General Electric's claims was that Island City had been negligent in hiring and retaining Diezel on the payroll.
The Florida Supreme Court ruled that there must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee. The court said:
That type of connection and foreseeability is not present in the instant case. Island City had reprimanded Diezel for failing to ground airplanes when he refueled them, for being late, and for taking off from work without authority. While Diezel had a military criminal record of imprisonment for a drug offense, there is no showing that there was any imprisonment for theft. Further, we do not *714 believe that this record establishes that it was foreseeable that this employee would take a joy ride in an easily identified commercial commuter plane that he had never flown before. Contrary to the finding of the district court of appeal, we find that, based on this record, Island City could not have foreseen Diezel's theft of this airplane.
Id. at 277.
The plaintiff's underlying claim in this case is that Trooper Gipson arrested her for DUI without probable cause. In order to have a viable claim against the Department for negligent retention and supervision, Trooper Gipson's employment history would need to contain incidents which would reasonably place the FHP on notice that Trooper Gipson was not competent to properly determine probable cause in a roadside stop. While there were numerous problems in Trooper Gipson's internal affairs history, her prior problems did not relate to the handling of roadside stops or the determination of probable cause to make an arrest.
The incident in question here occurred on February 12, 1995. The only parts of Trooper Gipson's internal affairs file which could be relevant would be for incidents which occurred prior to that date.[3]
For the period prior to February 12, 1995, the most serious substantiated internal affairs findings were that in October 1990, Trooper Gipson falsified her attendance reports so as to allow her to be paid for work off duty while also being paid for being on duty. The local office of the FHP recommended that Trooper Gipson be terminated, but this was overruled by FHP headquarters. The same infraction was repeated in March of 1994, but again did not result in termination.
Other internal affairs findings included that in December 1992, Trooper Gipson was involved in an accident and flaunted a firearm in public. Discipline was imposed. In August 1990, Trooper Gipson was disciplined for speeding 112 miles per hour in her patrol car while not on a call. In September 1990, Trooper Gipson was disciplined for failing to appear at court proceedings without making proper arrangements.
While we do not diminish the seriousness of this misconduct, under Island City these were not violations which related to Trooper Gipson's conducting of traffic or DUI stops. As in Island City, we fail to see that anything in this disciplinary record would have alerted FHP one way or the other regarding Trooper Gipson's ability to conduct a traffic stop or DUI investigation.
Further, at the time of the 1995 arrest, the trooper was acting as a trainee under the supervision of a training officer. We therefore conclude that the internal affairs file should not have been admitted into evidence.
As relates to Trooper Gipson herself, we do not see a plausible theory on which any of the disciplinary history would be admissible as similar acts evidence under section 90.404, Florida Statutes. The evidence was in effect an impermissible attack on character. There must be a new trial.[4]

VI.
The defendants challenge several other rulings by the trial court. We see no error *715 in the trial court's denial of the defendants' motion for directed verdict.
The defendants contend that they should have been allowed to introduce evidence that the plaintiff pled no contest to the noncriminal offense of reckless driving. Their argument is that while on the stand, the plaintiff's own testimony opened the door on that issue. The trial court did not believe that the plaintiff had opened the door and we see no basis on which to second guess that determination.
Trooper Gipson complains of procedural error with regard to her motion for summary judgment on the basis of qualified immunity. However, we do not understand Trooper Gipson to be arguing on this appeal that she was, in fact, entitled to qualified immunity. That being so, we do not address the issue further.

VI.
For the reasons stated, we reverse the judgment and remand for further proceedings consistent herewith.
NOTES
[1] After the time of this accident investigation, but prior to trial, Gipson and Rojas married.
[2] Since Trooper Gipson is being sued in her personal capacity and is a "person" under section 1983, the section 1983 claim against her is permissible. See Hafer v. Melo, 502 U.S. 21, 25, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); 1 Sheldon H. Nahmod, supra, § 1:15.
[3] It was therefore error to admit incidents in Trooper Gipson's internal affairs file occurring after February 12, 1995.
[4] If on remand the Department believes that the exclusion of the internal affairs file is fatal to the plaintiff's negligence claim, the Department may file a motion for summary judgment.