907 So.2d 655 (2005)
DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellant,
v.
Henry HARDY, Jr. and Mary Hardy, Appellees.
No. 5D04-860.
District Court of Appeal of Florida, Fifth District.
July 29, 2005.
*657 Barbara A. Eagan, Karen J. Cullen and Michael Broussard of Broussard, Cullen, DeGailler & Eagan, P.A., Orlando, for Appellant.
Christopher V. Carlyle, Shannon McLin Carlyle, Gilbert S. Goshorn, Jr., of The Carlyle Appellate Law Firm, The Villages, and Michael D. Jones of Michael D. Jones & Associates, P.A., Winter Springs, for Appellees.
THOMPSON, J.
A jury returned a $1,538,000 verdict against the State Department of Environmental Protection ("DEP") on the Hardys' amended cross-claim alleging negligence, negligent supervision of its employees, and trespass.[1] DEP argues that it did not owe any statutory or common law duty to the Hardys, and if it did, sovereign immunity barred a cause of action for breach of any duty. Because we conclude that the trial court erred in denying DEP's motion for directed verdict, we reverse.
The DEP held a lien on property owned and operated as the Hardys' family business. During foreclosure proceedings on the property, the Hardys filed cross claims against DEP, claiming that the agency's negligent acts resulted in their loss of the property and other lost profits.
AAA Tree Service, the Hardys' family business since 1957, expanded from pruning and removing trees to producing mulch and firewood. The business grew, and in 1987, Hardy purchased about thirty acres of land abutting Lake Griffin to conduct their business. The property was off State Road 427 in Longwood, Florida. The Hardys bought and used heavy equipment on site for the manufacture of mulch for bulk sale.
On more than one occasion in late 1989 or 1990, the Hardys' daughter and son confronted an individual on the family's property. When they questioned him about his presence on private property, he apologized without telling them his purpose and departed. They later learned that the individual, whom they described as a "hobo" with long hair and wearing tattered jeans, was Brian Carr, an environmental specialist with DEP. Carr later admitted that he did not have permission to be on the property and stated that he was there by "accident." His presence there formed the basis for the trespass claim.
DEP began receiving complaints that the Hardys were filling their wetlands and despoiling Lake Griffin in January 1991. Carr visited the property on 11 April and 24 April 1991 and prepared a report after each visit. His first report dated 11 April *658 1991 described observations of fill material in a wetland area and resulted in a warning notice dated 17 April 1991 for unpermitted dredge and fill activities. On 29 April 1991, DEP sent Hardy a second letter stating that a solid waste inspection of his property concluded that he did not have a permit to operate a construction and debris facility or a composting facility. There was no mention of wetland violations. According to DEP, Carr established jurisdiction at the time of both visits and flagged the wetlands jurisdictional lines on 18 June 1991. Further inspections conducted in 1991 resulted in a request later that year that Mr. Hardy provide a restoration plan to take fill out of the wetland area.
From 1991 through 1995, DEP conducted wetland and solid waste investigations of the Hardys' property and demanded restoration. Carr brought his investigation to the attention of the city commission, which in turn resulted in charges that Hardy had violated city ordinances. The investigations also triggered an action by DEP and the Game and Fresh Water Fish Commission. DEP pursued the original April 1991 violations until January 1993 when it initiated formal proceedings because the Hardys had not submitted a restoration plan. The Game and Fresh Water Fish Commission also conducted an inspection in 1992 and referred the case to the Seminole County State Attorney's Office, resulting in the filing of criminal charges against Hardy in early 1993, for unpermitted filling of surface waters, a misdemeanor. Hardy pleaded no contest, and the court adjudicated him guilty, imposed a thirty-day suspended sentence, and placed him on probation with the condition that he comply with the restoration plan. In light of the criminal case, DEP dropped its civil action. According to DEP, Hardy failed to comply with the terms of probation, including the restoration plan.
The Hardys allege negligence based upon DEP's employees' alleged negligent enforcement of regulations that breached DEP's duty to exercise reasonable care in carrying out its duties to act on behalf of and for the benefit of the public. The gist of this claim is that DEP employees negligently and wrongly asserted wetlands jurisdiction and imposed extreme conditions that resulted in the Hardys' loss of income and property. The Hardys contended that Carr erroneously established a 200-foot wetland boundary that exceeded existing regulations and thus DEP jurisdiction. For a time Hardy attempted to comply with the 200-foot requirement and employed Hugh Harling, an environmental consultant, to assist him in negotiating a restoration plan. In the long run, however, his efforts to comply with the 200-foot setback culminated in lost profits, repossession of the business's heavy equipment, and loss through foreclosure of the property.
The Hardys also claim that DEP negligently supervised its employees such that they exposed others to a foreseeable risk of harm through their tortious conduct. Its employees' unauthorized entry onto private lands and actions outside wetland jurisdictional bounds factually underpin the negligent supervision. To demonstrate Carr's malice, Hardy alleged that Hugh Harling telephoned Carr's supervisor to clarify DEP's concerns and to comment on Carr's "bullish" and "dangerous" conduct and need to demonstrate more compassion. He added that Carr showed a lack of patience and was becoming aggressive and unprofessional. The Hardys assert that DEP was also placed on notice of Carr's malfeasance by the circuit court decision, Department of Environmental Regulation v. Considder, Case no. C90-10519 *659 (Fla. 9th Cir. Dec. 3, 1993), rehearing denied, (Fla. 9th Cir.Ct. Feb. 2, 1994), affirmed, 647 So.2d 124 (Fla. 5th DCA Dec. 13, 1994) (table). Because the Considder case involved the same wetland jurisdiction statute and DEP employee Carr, the Hardys urged that the decision showed that DEP had notice of Carr's unfitness and improper actions taken with respect to the Hardys' property. Despite the trial court's refusal to take judicial notice of the case, Hardys' counsel, over objection, repeatedly referred to the 1993 Considder decision.
A few months before trial DEP filed a motion for summary judgment, arguing that there were no genuine issues of material fact and that the undisputed evidence failed to show that Carr and other DEP employees failed to exercise due care or acted with disregard of the Hardys' property rights in entering their property and imposing unreasonable regulations. DEP also contended that no evidence demonstrated that it negligently supervised its employees, who allegedly trespassed and overreached DEP's wetland jurisdiction. As regards the trespass claim, it asserted that no evidence proved either the actual trespass or the existence of damages because civil trespass to real property is an injury to or use of the land of another by one having no right or authority. Carr had the right and authority to conduct an investigation of the Hardys' property. Finally, even assuming any cause of action had been established, there was no evidence that Carr acted in "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," as required under section 768.28(9)(a), Florida Statutes (1997), to hold DEP liable for his actions.
The week before trial, the court denied the motion for summary judgment in its entirety. In ruling, the court "acknowledge[d] the immunity afforded the Defendants by Florida Statute 768.28, and [] advised the Plaintiffs that no evidence reflecting discretionary activity on the part of the Defendants will be admitted to establish liability on the part of the Defendants."
During the trial, DEP moved for a directed verdict on all of the claims, asserting several grounds, including duty issues, statute of limitations, service and notice under section 768.28(6) and (7), and sovereign immunity.
Not until day four of the trial did the Hardys identify the basis for their negligence claim as the DEP employees' wrongful assertion of wetland jurisdiction. Following a six-day trial, the jury returned a verdict finding that DEP was liable for negligence, negligent supervision, and trespass, but that Carr did not act in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The jury calculated total damages of $1,538,000 for the negligence and negligent supervision counts and awarded nominal damages of $100 for trespass. It apportioned sixty-five per cent of the liability to DEP and thirty-five per cent to the Hardys.
DEP filed a motion for judgment notwithstanding the verdict and a motion for new trial and for remittitur. Among other things, it argued that the nature of the alleged negligence, the manner in which DEP determined wetland jurisdiction, was a discretionary governmental decision for which sovereign immunity was not waived. Also, it contended that no trespass actually occurred because the Hardys' business was a commercial concern, open to the public, and there was no evidence of a specific warning to Carr that he was not welcome on the property. As regards the claim for negligent supervision, DEP argued *660 that the Hardys failed to demonstrate DEP's notice that Carr misconstrued the wetland jurisdiction statutes or otherwise demonstrated unfitness. The court denied DEP's post-trial motions. From the judgment entered on the verdict, this appeal ensued.
A threshold issue in negligence is whether the defendant owed any duty to a plaintiff. Robert-Blier v. Statewide Enter., Inc., 890 So.2d 522, 523 (Fla. 4th DCA 2005). It is a question of law whether any duty in tort exists. McCain v. Fla. Power Corp., 593 So.2d 500, 503 (Fla.1992).
To establish governmental tort liability, there must be a common law or statutory duty of care with respect to the alleged negligent conduct. Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912, 917 (Fla.1985). For basic judgmental or discretionary governmental functions, there has never been an applicable duty of care. Id. (citing Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla.1979)). The State of Florida has waived sovereign immunity from liability in tort actions under section 768.28 "for any act for which a private person under similar circumstances would be held liable." Pollock v. Fla. Dep't of Highway Patrol, 882 So.2d 928, 932 (Fla.2004). But the statute did not establish any new duty of care for governmental entities. Trianon Park, 468 So.2d at 917. If no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign should be immune from suit need not be reached. Pollock, 882 So.2d at 932.
Thus, before turning to the question of sovereign immunity, we must address the question of the duty of care in the context of the Hardys' claims. There has never been a common law duty to individual citizens for the enforcement of police power functions. Trianon Park, 468 So.2d at 918. Legislative enactments for the benefit of the general public do not automatically create an independent duty to either individual citizens or a specific class of citizens. Id. at 917. We thus conclude that no statutory duty arose by virtue of the enactment of laws for the protection of the state's environmental resources. Private individuals do not make determinations of wetland jurisdictional lines. In fact, the supreme court in Trianon Park specifically included environmental inspectors within the category of regulatory officials given the discretionary power to enforce compliance with the law and deemed these discretionary functions immune from tort liability. Id. at 919.
Negligent supervision of an agent has long been recognized as a basis for tort liability in Florida. Storm v. Town of Ponce Inlet, 866 So.2d 713, 716 (Fla. 5th DCA), review denied, 879 So.2d 624 (Fla.2004). Florida courts have also recognized this tort in cases involving the state or one of its agencies as a defendant. Id. at 717. Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment. Garcia v. Duffy, 492 So.2d 435, 438-39 (Fla. 2d DCA 1986). The plaintiff must allege facts sufficient to show that once an employer received actual or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action. Id. at 441. The employer's liability for negligent supervision is not, however, unlimited; not only must the employer owe a duty to the plaintiff, but the breach of that duty must be the proximate cause of the plaintiff's harm. *661 Watson v. City of Hialeah, 552 So.2d 1146, 1149 (Fla. 3d DCA 1989). There must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee. Dickinson v. Gonzalez, 839 So.2d 709, 713-14 (Fla. 3d DCA 2003) (citing Island City Flying Serv. v. Gen. Elec. Credit Corp., 585 So.2d 274, 277 (Fla.1991)).
The Hardys failed to demonstrate the elements of negligent supervision. At trial, the Hardys claimed DEP was aware or should have been aware of Carr's unfitness through Hugh Harling's comments to Carr's supervisor that Carr was "bullish" and "aggressive" and needed to be more diplomatic. One expert witness testified to a conversation with Carr, who admitted his use of a jurisdictional regulation not then in effect, but one that he expected to be implemented in the future. There is no other support in the record that Carr used an improper regulation, and the experts disagreed on whether DEP had jurisdiction over the wetlands. Finally, the Hardys urge that the Considder decision supported DEP's notice of his unfitness because that case also concerned Carr's jurisdictional overreaching. The Considder decision was, however, not decided until late 1993, and was not final until late the following year, long after Carr's "bullish" conduct and jurisdictional wetland designations that took place in 1991 and 1992. Furthermore, the trial court refused to take judicial notice of the decision. DEP simply had no notice of any unfitness demonstrated by Carr's performance of his duties.
The Hardys claim that the DEP, through Mr. Carr and others, unlawfully trespassed on their property and illegally obtained evidence used to further harass them. Even assuming the trespass, that act is remote to the damages claimed of lost business and loss of property through foreclosure. Mr. Carr admitted that he entered the property without permission. DEP argues and we agree that there can be no trespass under these circumstances. The property operated as a commercial enterprise open to the public, and the evidence demonstrates only one entry "without permission" on 11 April 1991 that Carr explained as accidental. The jury awarded a mere $100 as nominal damages for its evaluation of damages attributable to trespass.
We conclude that no statutory or common law duty arose and that the elements of negligent supervision and trespass were not proven, and, therefore, we need not reach the question of sovereign immunity. As our supreme court recognized:
Governments must be able to enact and enforce laws without creating new duties of care and corresponding tort liabilities that would, in effect, make the governments and their taxpayers virtual insurers of the activities regulated.... Such a holding would inevitably restrict the development of new programs, projects, and policies and would decrease governmental regulation intended to protect the public and enhance the public welfare.
Trianon Park, 468 So.2d at 922-23. Carr's actions in delineating a wetland jurisdictional line and enforcing environmental regulations necessarily involve a basic governmental policy of protecting the state's natural resources. His duties to conduct wetland studies, investigate environmental complaints, and enforce regulations to safeguard the environment are essential to the state's policy objectives. His decisions required the exercise of basic policy evaluation, judgment, and expertise on DEP's part. These discretionary functions of government are inherent in the act *662 of governing and are immune from suit. Commercial Carrier, 371 So.2d at 1022.
We therefore REVERSE the final judgment and REMAND with directions to enter judgment in favor of DEP.
SHARP, W. and MONACO, JJ., concur.
NOTES
[1] The underlying complaint is a mortgage foreclosure proceeding brought by AVCO Financial Services of Florida, Inc. against the Hardys and the Florida Department of Environmental Protection that held a lien on the Hardys' property.