**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 25-11410
Non-Argument Calendar
_____

KENNETH BYNDOM,

Plaintiff-Appellant,

versus

WAFFLE HOUSE, INC.,
a Foreign Profit Corporation,
EAST COAST WAFFLES, INC.,
a Foreign Profit Corporation,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-01971-JA-LHP
_____

Before JORDAN, KIDD, and BLACK, Circuit Judges.

PER CURIAM:

In the early morning of July 30, 2022, Kenneth Byndom entered a Waffle House restaurant where he got into an argument with Waffle House employee Kevin Edwards.  The argument ended with Edwards stabbing Byndom in the face.

Byndom sued Waffle House, Inc., and East Coast Waffles, Inc. (collectively, "Waffle House"), asserting that Waffle House was liable based on Edwards's actions under Florida law.  The district court granted summary judgment to Waffle House on all of Byndom's claims.  Byndom appeals that decision.

After review,[1] we affirm the district court's grant of summary judgment to Waffle House.

## I.  BACKGROUND

We recount the facts underlying Byndom's claims, accepting his version of events where there is a dispute except when Byndom's version is contradicted by the surveillance video evidence submitted in this case.  *See Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).

On July 30, 2022, Edwards was working an early-morning shift as a server at a Waffle House restaurant in Kissimmee, Florida, with his supervisor, Chynna Nembhard, and coworker, Amanda

---

[1] "We review a district court's decision on summary judgment *de novo* and apply the same legal standard used by the district court, drawing all inferences in the light most favorable to the non-moving party and recognizing that summary judgment is appropriate only where there are no genuine issues of material fact." *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1168 (11th Cir. 2023) (quoting *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017)).

Palmese.  At 4:52 a.m., Byndom entered the restaurant with his girlfriend and two of her friends.[2]  Byndom approached the counter and began speaking with Edwards, complaining that he had been denied service at another Waffle House restaurant.  During this initial interaction, Byndom gesticulated with his hands to some extent.[3]

The employees took the orders of Byndom and the others and began preparing their food, during which time Byndom was apparently calm.  After a few minutes, Byndom, who was standing at the counter, and Edwards, who was standing at the cash register behind the counter, began speaking to each other.  Soon after, Byndom walked from the counter to the cash register and began visibly arguing with Edwards.[4]  At a certain point, Nembhard intervened and attempted to calm the situation down, but Edwards and Byndom, who was clearly growing angry, continued to argue.  Nembhard told Byndom that they were working to prepare his order but that, if he was unhappy with their service, he could leave.

---

[2] During his deposition, Byndom testified that he remembered almost nothing of what happened during the incident.

[3] The Waffle House employees described Byndom as being agitated, but Byndom denied that he was angry when he entered the restaurant.

[4] The Waffle House employees stated that Byndom was cursing at Edwards and insulting him using harsh language, but Byndom did not remember what he said.  Edwards denied cursing back at Byndom, but Nembhard and Palmese stated that Edwards did curse at Byndom at least to some extent.

When Nembhard saw that her attempt to defuse the situation had failed, she directed Edwards to leave the restaurant. After clocking out, Edwards grabbed his backpack and exited the restaurant through the front door, which required him to pass through the customer area where Byndom was standing.[5] While Edwards was leaving, Byndom followed him and continued to speak to him, but Edwards ignored Byndom. After Edwards left, Byndom returned to the counter, where he spoke with Nembhard.

A few seconds later, Edwards came back into the restaurant through the same front door because he realized that he had forgotten his phone. When Byndom saw Edwards reenter the restaurant, he began again to speak visibly aggressively to Edwards while Edwards walked behind the counter into the employees' area. Edwards then left the employees' area and passed through the customers' area to exit again through the front door, walking past Byndom, who followed him and continued to argue with him.

When Edwards neared the front door, he turned to face Byndom, who walked up to Edwards and got in his face.[6] Edwards then stabbed Byndom in the face with a waffle pick[7] that he had in

---

[5] The restaurant had an emergency back door, but Waffle House management had instructed the employees not to use that door during night shifts.

[6] Edwards stated that at this point Byndom threatened to kill him, but Byndom denied making any such threats.

[7] A waffle pick is an implement about the size of an ice pick that Waffle House employees use to remove waffles from hot waffle irons and to clean the irons.

his pocket, injuring Byndom's eye and ear.  Edwards then left the restaurant.

At some point during the altercation, one of the other Waffle House employees called the police, who arrived shortly thereafter.  The responding officers arrested Edwards, although ultimately he was not criminally charged for the incident.

In March 2023, Byndom sued Waffle House in Florida state court, asserting claims of negligence and vicarious liability under Florida law.  Waffle House removed the complaint to federal court based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

Byndom then filed an amended complaint, which is the operative pleading.  In his amended complaint, Byndom asserted against Waffle House claims of (1) premises-liability negligence, which asserted that Waffle House negligently failed to maintain its premises in a reasonably safe condition (Counts 1 and 5); (2) vicarious liability, which asserted that Waffle House was liable for the stabbing as Edwards's employer (Counts 2 and 6); and (3) negligent hiring, retention, supervision, and training, which asserted that Waffle House was negligent in hiring and retaining Edwards and negligent in training its employees to ensure the safety of its customers (Counts 3, 4, 7, and 8).

Waffle House moved for summary judgment as to all of Byndom's claims.  On March 31, 2025, the district court granted Waffle House's motion in full.

First, the district court concluded that Byndom's premises-liability negligence claim failed because it was not reasonably foreseeable to Waffle House that Edwards would stab Byndom with a waffle pick. Second, the court concluded that Byndom's vicarious-liability claim failed because Edwards was not acting within the scope of his employment when he stabbed Byndom.

Third, the district court concluded that Byndom's negligent-hiring claim failed because Byndom submitted insufficient evidence to establish (1) that Waffle House was obligated to perform a background check on Edwards before hiring him, or (2) that Waffle House was negligent in hiring Edwards despite knowing that he had previously been arrested in 2019 for bringing a firearm to school and shoving a law enforcement officer while attempting to flee. Fourth, the court concluded that Byndom's negligent-supervision and -retention claims failed because Byndom submitted insufficient evidence to establish that Edwards had any problems indicating his unfitness for work that arose during the course of his employment prior to July 30, 2022. Lastly, the court concluded that Byndom's negligent-training claim failed because Byndom submitted no evidence establishing that the stabbing resulted from Waffle House's failure to properly train its employees.

Byndom timely appealed.

## II. DISCUSSION

On appeal, Byndom challenges all of the district court's conclusions in the March 31 order. We address each of Byndom's

claims in turn.[8]

## A. Premises Liability

Under Florida law, "[a] landowner has a duty to protect an invitee on his premises from a criminal attack that is reasonably foreseeable." *Ameijeiras v. Metro. Dade Cnty.*, 534 So. 2d 812, 813 (Fla. 3d DCA 1988); *see also Stevens v. Jefferson*, 436 So. 2d 33, 34 (Fla. 1983). "To determine whether the risk of injury to a plaintiff is foreseeable under the concept of duty, courts must look at whether it was objectively reasonable to expect the specific danger causing the plaintiff's injury, not simply whether it was within the realm of any conceivable possibility." *Saunders v. Baseball Factory, Inc.*, 361 So. 3d 365, 369 (Fla. 4th DCA 2023) (quotation marks omitted).

For premises-liability claims based on attacks by third parties, "[e]vidence relevant to foreseeability includes the general likelihood of harm to the invitee, criminal activity in the vicinity, and security measures taken by the owner of the premises." *Meyers v. Ramada Hotel Operating Co.*, 833 F.2d 1521, 1523 (11th Cir. 1987) (citing *Stevens*, 436 So. 2d at 34). The Florida Supreme Court has explained that whether an attack by a third party against a business invitee was reasonably foreseeable to the business owner can be established by proving (1) "knowledge of a particular assailant's propensity for violence" or (2) "actual or constructive knowledge, based upon past experience, that there is a likelihood of disorderly

---

[8] Because this is a diversity action, we apply the substantive law of Florida to resolve Byndom's Florida-law claims. *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1020 (11th Cir. 2014).

conduct by third persons in general which may endanger the safety of" invitees.  *Stevens*, 436 So. 2d at 35.  To succeed via the latter method, the plaintiff must show that the defendant business owner had "actual or constructive knowledge of *similar* criminal acts committed on [its] premises."  *Ameijeiras*, 534 So. 2d at 813.

Byndom's premises-liability claim fails because he submitted insufficient evidence from which a reasonable jury could conclude that the July 30, 2022, stabbing was reasonably foreseeable to Waffle House.[9]  *See Stevens*, 436 So. 2d at 34-35; *see also Ameijeiras*, 534 So. 2d at 813.  Byndom did not submit any evidence indicating that Edwards had a violent propensity or that similar physical altercations to the stabbing had previously occurred at the Kissimmee Waffle House restaurant.  In fact, both of Edwards's coworkers testified during their depositions that Edwards was not violent and that no similar physical altercations had occurred at the Kissimmee restaurant.

Without any such evidence—or evidence of criminal activity in the general vicinity of the restaurant—Byndom's premises-liability claim cannot survive summary judgment.  *See Meyers*, 833 F.2d at 1523; *Wal-Mart Stores, Inc. v. Caruso*, 884 So. 2d 102, 105 (Fla. 4th DCA 2004) (holding that Wal-Mart was not liable based on the actions of its employee poisoning another employee at one of its stores because the poisoning was "an unforeseeable criminal act"); *Ameijeiras*, 534 So. 2d at 813-14 (holding that a county was not liable

---

[9] It is undisputed that Byndom was an invitee at the Waffle House at the time of the stabbing.

to a person shot at a local park because there was no evidence that violent crimes had been reported to the county in the two years prior to the shooting or that the county knew of similar violent criminal activity occurring at the park).

In support of this claim, Byndom relies solely on statements made by Nembhard in her deposition testimony in which she described (1) her general experience at multiple Waffle House restaurants of dealing with angry customers and (2) past verbal altercations with customers at the Kissimmee restaurant. However, these statements are insufficient to satisfy Byndom's burden of production at the summary judgment stage because they do not point to any occurrences even remotely similar to the July 30, 2022, stabbing. *See Ameijeiras*, 534 So. 2d at 813. To establish reasonable foreseeability, Byndom did not need to provide evidence of previous occurrences *identical* to the stabbing; he simply needed to provide evidence of previous occurrences at least *similar* to the stabbing. *See Hardy v. Pier 99 Motor Inn*, 664 So. 2d 1095, 1098 (Fla. 1st DCA 1995) (holding that a plaintiff who was stabbed in a hotel parking lot presented sufficient evidence of reasonable foreseeability to survive summary judgment by showing prior violent and criminal activity at the hotel that was less serious than the stabbing).

Because Byndom failed to provide any such evidence, the district court did not err by granting summary judgment to Waffle House on the premises-liability claim.

## B. Vicarious Liability

Under Florida law, an employer is vicariously liable for an intentional tort committed by its employee if the employee committed the tort while acting within the scope of his employment.[10] *Trabulsy v. Publix Super Mkt., Inc.*, 138 So. 3d 553, 555 (Fla. 5th DCA 2014) (citing *Weiss v. Jacobson*, 62 So. 2d 904, 906 (Fla. 1953)). "Conduct is within the scope of employment if it occurs substantially within authorized time and space limits, and it is activated at least in part by a purpose to serve the master." *Id.* (quotation marks omitted)

As a general rule, "batteries by employees are held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer." *Valeo v. E. Coast Furniture Co.*, 95 So. 3d 921, 925 (Fla. 4th DCA 2012) (quotation marks omitted). However, an employer is liable for a battery committed by its employee during the course of his employment if the employee intended "to further a purpose or interest, however excessive or misguided, of the employer." *Id.* (quotation marks omitted). An employer is not liable for an employee's battery if "the employee had 'stepped away' from [the] employer's business at the time of the infliction of the tort and [his] motive was unrelated to [his] duties, but rather was in the furtherance of [his] interests." *Lay v. Roux Lab'ys, Inc.*, 379 So. 2d 451, 453 (Fla. 1st DCA

---

[10] Whether the employee's tort was reasonably foreseeable is not relevant for a vicarious-liability claim. *See Valeo v. E. Coast Furniture Co.*, 95 So. 3d 921, 925 (Fla. 4th DCA 2012).

1980); *see also Weiss*, 62 So. 2d at 906; *City of Miami v. Simpson*, 172 So. 2d 435, 437 (Fla. 1965).

The district court did not err by granting summary judgment to Waffle House on Byndom's vicarious-liability claim because a reasonable jury could not conclude that Edwards was acting within the scope of his employment when he stabbed Byndom. *See Trabulsy*, 138 So. 3d at 555; *Valeo*, 95 So. 3d at 925. That is because a reasonable jury could only conclude that, at the time of the stabbing, Edwards had "stepped away" from his employment with Waffle House and acted solely based on a personal motive unrelated to his duties as a Waffle House employee. *See Lay*, 379 So. 2d at 453; *Weiss*, 62 So. 2d at 906; *Simpson*, 172 So. 2d at 437.

The undisputed record evidence established that, after Byndom and Edwards started arguing, Nembhard directed Edwards to leave the restaurant. Edwards then clocked out and exited the restaurant without incident. At that point, Edwards clearly had "stepped away" from his employment and was no longer acting in his capacity as a Waffle House employee. *See Lay*, 379 So. 2d at 453.

Edwards then reentered the restaurant for a completely personal reason—to retrieve his cell phone that he had forgotten. There is no evidence even suggesting that Edwards reentered the restaurant for any reason relating to his employment.

Then, after retrieving his cell phone, Edwards moved to leave the restaurant again and was right next to the front door

about to exit when Byndom (who was significantly larger than Edwards, weighing approximately 260 pounds, while Edwards weighed only approximately 140 to 150 pounds) approached Edwards and got in Edwards's face. It was only at that point that Edwards stabbed Byndom.

In light of this undisputed evidence, a reasonable jury could not conclude that Edwards was motivated by Waffle House's interests when he stabbed Byndom. As already related, Edwards had clocked out, left the restaurant, and only reentered the restaurant for a purely personal reason. There are no facts indicating that any of Edwards's actions after leaving the restaurant were motivated by his employment duties.

For these reasons, a reasonable jury could only conclude that Edwards was not acting within the scope of his employment when he stabbed Byndom. Therefore, the district court did not err by granting summary judgment to Waffle House on Byndom's vicarious-liability claim.

## C. Negligent Hiring, Retention, and Supervision

Florida law allows plaintiffs to recover on the separate torts of (1) negligent hiring and (2) negligent retention/supervision.[11] *See Garcia*, 492 So. 2d at 438 (citing *Mallory v. O'Neil*, 69 So. 2d 313

---

[11] The torts of "negligent retention" and "negligent supervision" are identical, and so we do not analyze the two claims separately. *See Malicki v. Doe*, 814 So. 2d 347, 362 n.15 (Fla. 2002) (discussing negligent supervision and negligent retention without differentiating between the two).

(Fla. 1954)).  These torts provide that an employer can be liable for its failure to exercise reasonable care in hiring and retaining an employee when the employee commits an intentional tort outside of the scope of his employment.  *See id.*

To establish a claim of negligent hiring, a plaintiff must show that the employer knew or should have known of the employee's unfitness at the time of hiring but hired the employee anyway.  *Id.* Specifically, a plaintiff must prove that

> (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known.

*Id.* at 440; *Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002).

To establish a claim of negligent retention, a plaintiff must show that (1) the employer knew of or should have known of problems with a particular employee's fitness that arose after the employee was hired and (2) unreasonably failed to investigate or take any corrective action.  *Garcia*, 492 So. 2d at 438-39, 441; *Malicki*, 814 So. 2d at 362 n.15.

The primary distinction between claims of negligent hiring and negligent retention "concerns the time at which the employer is charged with knowledge of the employee's unfitness."  *Malicki*, 814 So. 2d at 362 n.15.  Negligent hiring focuses on facts indicating

the employee's purported unfitness that arose before the employee was hired, while negligent retention focuses on facts indicating the purported unfitness that arose after the employee was hired. *Id.*; *Garcia*, 492 So. 2d at 438-39. The "core predicate" for such claims is "reasonable foreseeability." *Malicki*, 814 So. 2d at 362.

Byndom's negligent-hiring and -retention claims fail because he submitted insufficient evidence from which a reasonable jury could conclude that Waffle House was negligent either in hiring Edwards or retaining him after he was hired. That is because Byndom did not provide enough evidence to show that it was reasonably foreseeable to Waffle House that Edwards would stab Byndom based on any facts regarding Edwards's unfitness for employment that it knew or should have known.

As to the negligent-hiring claim, the only fact that Byndom points to in support of Edwards's unfitness for employment that arose prior to his being hired is Edwards's criminal background. Specifically, it is uncontested that Edwards was (1) arrested in 2019 for possessing a firearm on school property and battery on a law enforcement officer and (2) convicted of the misdemeanor of driving under the influence. As to the 2019 arrest, Edwards was found to have brought a firearm to school while he was still a student, and when this was discovered, he shoved a police officer while attempting to flee. Edwards was charged for those offenses but was not convicted because he was instead placed in a diversionary program.

These facts are insufficient to support a claim of negligent hiring because a reasonable jury could not conclude that it was unreasonable for Waffle House to hire Edwards in light of his criminal history even if Waffle House knew about it. The Florida Supreme Court has rejected the position that the simple fact that a potential employee has a criminal record is sufficient to hold an employer liable for negligent hiring when that employee commits an intentional tort. *Island City Flying Serv. v. Gen. Elec. Credit Corp.*, 585 So. 2d 274, 277 (Fla. 1991). Rather, for a plaintiff to succeed on a negligent-hiring claim under such circumstances, there must be a connection between the employee's criminal record and intentional tort such that it was reasonably foreseeable to the employer that the employee would commit the tort. *See id.* (concluding that employee's theft was not reasonably foreseeable based on prior drug conviction); *see also Williams v. Feather Sound, Inc.*, 386 So. 2d 1238, 1241 (Fla. 2d DCA 1980) ("To say that an employer can never hire a person with a criminal record at the risk of being held liable for his tortious assault flies in the face of the premise that society must make a reasonable effort to rehabilitate those who have gone astray.").

In this case, there is an insufficient connection between, on the one hand, Edwards's 2019 arrest and misdemeanor DUI conviction and, on the other hand, his stabbing of Byndom. A reasonable jury could not conclude that Edwards's actions of bringing a firearm to school and shoving a police officer while attempting to flee would make it reasonably foreseeable to Waffle House that Edwards would stab Byndom in the face with a waffle pick. *See*

*Int'l Sec. Mgmt. Grp., Inc. v. Rolland*, 271 So. 3d 33, 50 (Fla. 3d DCA 2018) (concluding that twenty-three-year-old conviction for grand theft did not put employer on notice that employee would commit torts of malicious prosecution and defamation); *Phillips v. Edwin P. Stimpson Co., Inc.*, 588 So. 2d 1071, 1073 (Fla. 4th DCA 1991) (concluding that nineteen-year-old drug conviction did not put employer on notice that employee would commit criminal assault with acid). These past criminal actions did not suggest that Edwards might violently stab someone in the face. It is also significant that Edwards was vouched for by his mother, who was a long-time, trusted Waffle House employee in a management position. *See Int'l Sec. Mgmt. Grp.*, 271 So. 3d at 50 (noting that employer would have decided to hire employee with prior arrest even if it had known about the arrest because the employee was a recommended hire by a client).

For these reasons, the district court did not err by granting summary judgment to Waffle House on the negligent-hiring claim.

As to the negligent-retention claim, Byndom did not submit any evidence whatsoever that Edwards had any problems suggesting an unfitness for employment that arose after he was hired. Rather, all deposition testimony supports the conclusion that Edwards had no problems at all in between the date he was hired and July 30, 2022. Therefore, a reasonable jury could not conclude that Waffle House was negligent in failing to investigate or take any corrective action against Edwards prior to the stabbing. *See Garcia*, 492 So. 2d at 438-39, 441; *Malicki*, 814 So. 2d at 362 n.15; *see also*

*Dep't of Env't Prot. v. Hardy*, 907 So. 2d 655, 661 (Fla. 5th DCA 2005) ("There must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee."). Accordingly, the district court did not err by granting summary judgment to Waffle House on the negligent-retention claim.

### D. Negligent Training

"Under Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001) (citing *McFarland & Son, Inc. v. Basel*, 727 So. 2d 266 (Fla. 5th DCA 1999)). To succeed on a negligent-training claim, a plaintiff must show that the employer "was negligent in the implementation or operation of [its] training program." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005).

In this case, a reasonable jury could not find that Waffle House was negligent in training its employees. The undisputed record evidence establishes that Waffle House thoroughly trained its employees in de-escalation tactics and security policies and ensured that its employees retained their training by providing reminders and occasional retraining when necessary. In particular, Waffle House had training videos playing on repeat in the back of each restaurant, including one relating to de-escalation, as well as posters outlining de-escalation techniques. Byndom did not submit any evidence suggesting that the de-escalation training was insufficient or inadequately applied in practice.

On appeal, Byndom raises two arguments that Waffle House was negligent in its training of its employees. First, Byndom argues that Waffle House was negligent by failing to have a policy regarding the proper storage of waffle picks. However, Byndom provides no arguments and cites to no evidence indicating how his injuries were a "reasonably foreseeable consequence" of Waffle House's failure to implement such a policy. *See Stevens*, 436 So. 2d at 35 (discussing general negligence principles) (quoting *Crislip v. Holland*, 401 So. 2d 1115, 1117 (Fla. 4th DCA 1981)); *see also Lewis*, 260 F.3d at 1265. Byndom did not submit any evidence indicating that it was common for Waffle House employees to carry waffle picks with them around the restaurant, let alone attack customers with the implements. For that reason, we do not see how a reasonable jury could conclude that Waffle House could have reasonably foreseen that its failure to implement a waffle-pick policy might possibly have led to Byndom's injuries.

Second, Byndom argues that Nembhard's actions in instructing Edwards to go outside during the altercation indicates that Waffle House was negligent in training its employees. He asserts that Nembhard's actions were contrary to Waffle House's de-escalation policy, which stated that employees should not go outside to defuse a situation or to address an angry customer. However, Waffle House's corporate representative explained during his deposition that when employees are trained in de-escalation, they are not told that they should never go outside of a restaurant, but rather are told not to follow an angry customer outside of a restaurant. He also explained that employees are given discretion in what

actions to take to de-escalate a situation, including calling the police if needed, and are told to "use their best judgment."

A reasonable jury could not conclude that Nembhard's decision to send Edwards out of the restaurant indicated that Waffle House was negligent in its de-escalation training. That is because Nembhard's actions were not inconsistent with Waffle House's de-escalation polices as described by Waffle House's corporate representative. Further, the video evidence clearly establishes that Nembhard's decision to separate Byndom and Edwards did not cause the ultimate injuries. When Edwards left the restaurant, Byndom stopped arguing with Edwards and did not follow him outside or attempt to fight with him. It was only after Edwards reentered the restaurant that Byndom resumed arguing with Edwards, which led to the stabbing.

These facts, rather than supporting Byndom's position, instead support the conclusion that Waffle House had effective de-escalation policies and trained Nembhard well in those policies. Nembhard's decision to have Edwards leave the restaurant obviously helped the situation, and it was Edwards's decision to reenter the restaurant that led to Byndom's injuries. Edwards's action in reentering the restaurant was outside of Nembhard's control, and so any alternative or additional de-escalation training would not have helped her to prevent the stabbing.

For these reasons, the district court did not err in granting summary judgment to Waffle House on the negligent-training claim.

## III.  CONCLUSION

The district court did not err by granting summary judgment to Waffle House on all of Byndom's claims. Accordingly, we affirm the district court.

**AFFIRMED.**