[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14937
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 4, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:10-cv-20240-DLG

CARLOS BELLO,
JENNIFER BELLO,

Plaintiffs - Appellants,

versus

CEDRIC JOHNSON,
individually,
CAROL JORDAN,
individually,
MIAMI-DADE COUNTY,
a Political Subdivision of the State of Florida,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 4, 2011)

Before PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Carlos and Jennifer Bello appeal the dismissal of their complaint that their civil rights were violated in the events related to Carlos's arrest and prosecution for embezzling funds from L121, the local union of the American Federation of State, County, and Municipal Employees' Labor Union. 42 U.S.C. § 1983. The district court dismissed the complaint on the ground that the Bellos failed to allege facts to establish that Miami-Dade County and its employees, special agent Cedric Johnson and prosecutor Carol Jordan, lacked probable cause to arrest Carlos Bello. See Fed. R. Civ. P. 12(b)(6). We affirm.

Jay Staley, the president of L121, filed with the Miami-Dade County Office of the Inspector General a complaint that alleged that Bello, a former Executive Board Member, and other former officials of L121 had embezzled funds from the local union. Staley alleged that the former president and the former secretary-treasurer of L121 had refused to transfer to incoming officials the financial documents of L121 and that the secretary-treasurer, James Gonzalez, had closed the longstanding checking account of L121 and opened a new checking account at a different bank without the knowledge or permission of the members of L121. The successor to Gonzalez inherited a check register that had checks missing, including a check that had been made payable to and signed by Gonzalez.

Special agent Johnson was assigned to investigate the complaint and he

2

later filed a 20-page affidavit that requested a warrant to arrest Bello and three other former officers of L121 for conspiring to violate and violating state racketeering laws and for grand theft, Fla. Stat. §§ 895.03, 812.014. Johnson described how Bello and the officers had stolen union dues paid by county employees to L121 by paying themselves with the money owed to the international union and the Public Employees Relations Commission of Florida. Johnson stated that Bello stole $18,726 and the officers stole an additional $332,106, and Johnson attached to his affidavit a 54-page spreadsheet containing the check numbers, signatories, amounts paid, and disposition of each check made payable to Bello and the officers between January 1997 and October 2002. Johnson included in the affidavit the legitimate expenses incurred by L121 and he compared payments made to reimburse union members with the large payments made to Bello and the officers. Johnson discussed eight items of evidence that established how Bello and the officers stole from L121 and violated state law: (1) testimonies of 22 current members of L121, including Executive Board members Yvette McLeod and Darlene Jefferson, that they were neither told of or approved the payments made to Bello and the officers; (2) testimony of a director of the international union that the payments were not documented in compliance with union procedures; (3) two monthly financial reports submitted by L121 to the

3

international union that listed amounts less than those paid to Bello and the officers; (4) tax forms submitted by L121 between 1997 and 2002 that stated that no payments were made to its officers and that classified a majority of the stolen funds as expenses incurred for equipment rental and maintenance for "fundraising," although L121 did not conduct any fundraising during that time span; (5) tax forms submitted to the Internal Revenue Service that did not disclose payments made to Bello and the officers; (6) testimony of an accountant that Gonzalez had instructed him to classify the payments to Bello and the officers as costs for conferences, conventions, and meetings; (7) fraudulent reports submitted by the officers to the Public Employees Relations Commission about their compensation, including the annual financial statement for 2001 on which Gonzalez falsely represented that L121 had not paid any officer more than $10,000; and (8) testimony from McLeod that the officers said that L121 lacked funds to pay the Commission.

Bello cooperated with the Office of the Inspector General, and later the County nol prossed the charges against Bello. The County subpoenaed Bello, and Bello testified about the union dues. Bello stated that he had agreed to testify without any arrangement regarding the disposition of his criminal charges and that, if he testified for the prosecution, his charges would be dismissed. Bello also

4

testified that he had "agree[d] not to seek any positions from" the County.

After the Bellos filed their complaint in a Florida court, the County, Johnson, and Jordan removed the complaint to the district court. The Bellos complained that Carlos had been maliciously prosecuted and, as a result, Jennifer had suffered and would continue to suffer a loss of consortium. The Bellos alleged that Johnson and Jordan had used information that they knew to be false to execute an affidavit and to arrest and prosecute Carlos. The Bellos alleged that the affidavit was false because: (1) Johnson and Jordan, who had been "an active participant in the criminal investigation," had "withheld information from witnesses" and "withheld exculpatory evidence"; (2) Johnson had relied on statements and information provided by McLeod and another member of the Executive Board; and (3) Johnson had omitted certain "exculpatory evidence," including that Bello "had not and could not write himself any checks drawn on Local 121's bank accounts" and Bello had not been responsible for any recordkeeping for L121 or for the loss or destruction of its financial records. The Bellos also alleged that the County had negligently supervised and retained its employees.

The County, Johnson, and Jordan moved to dismiss the complaint and, alternatively, for summary judgment against the Bellos. The County and Johnson

5

argued that the Bellos failed to allege sufficient facts to establish their claims for relief and that Johnson and Jordan had probable cause to arrest and prosecute Carlos. The County and Johnson attached to their motions copies of Johnson's affidavit, the spreadsheet attached to the affidavit, and Bello's statement. Johnson and Jordan argued that Bello could not establish a prima facie case of malicious prosecution because his criminal proceeding had not been terminated in his favor. Jordan also argued that she was entitled to absolute immunity or, alternatively, qualified immunity.

The district court dismissed the Bellos' complaint. The district court ruled that the Bellos failed to allege that Johnson and Jordan lacked probable cause to arrest and charge Carlos. The district court found that the information in the "Affidavit and [the Bellos'] allegations support a finding of probable cause to arrest Bello." The district court found that, "even if it were to 'amend' the affidavit to eliminate the alleged misrepresentations and add the alleged omissions," as permitted in Franks v. Delaware, 438 U.S. 154, 171–72, 98 S. Ct. 2674, 2684 (1978), "there would still be probable cause to arrest" Bello. The district court ruled that Bello's "claims for negligent supervision [against the County] and his wife's claim for loss of consortium" also "must fail as they are predicated on the malicious prosecution claims."

6

The district court did not err by dismissing the Bellos' complaint about malicious prosecution. To state a claim for malicious prosecution under Florida law, the Bellos had to allege facts that established "there was an absence of probable cause for the original [criminal] proceeding." Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). Because an arrest warrant is presumptively valid, Franks, 438 U.S. at 171, 98 S. Ct. at 2684, the Bellos had to establish that, absent the alleged "'misrepresentations or omissions, probable cause would have been lacking.'" United States v. Gamory, 635 F.3d 480, 490 (11th Cir. 2011) (quoting United States v. Novaton, 271 F.3d 968, 987 (11th Cir. 2001)). The pleadings and attachments, when read in the light most favorable to the Bellos, see Thaeter v. Palm Beach Cnty. Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006), defeat their argument that Johnson and Jordan lacked probable cause to arrest and prosecute Carlos. Notwithstanding the alleged misrepresentations and omissions in the affidavit, the financial information and testimony from labor union officials included in Johnson's affidavit and the attached spreadsheet established that Carlos received $18,000 in payments from L121 without the approval of its membership or documentation to support those payments. See Franks, 438 U.S. at 171–72, 98 S. Ct. at 2684; Gamory, 635 F.3d at 492.

The district court also did not err by dismissing the Bellos' remaining complaints about negligent supervision and retention and loss of consortium. To state a claim of negligent supervision and retention, Carlos had to plead facts that established the County should have foreseen, based on its employees' work history, that they would commit the current tort. See Dickinson v. Gonzalez, 839 So. 2d 709, 713–14 (Fla. Dist. Ct. App. 2003). The Bellos failed to allege any facts about previous misconduct by Johnson and Jordan that would have placed the County on notice of possible future misconduct. Jennifer's claim for loss of consortium shares a similar fate. Under Florida law, a claim for loss of consortium "is a derivative right [for which a wife] may recover only if her husband has a cause of action against the same defendant." Gates v. Foley, 247 So. 2d 40, 45 (Fla. 1971). Because Carlos's complaints of malicious prosecution and negligent supervision and retention failed to state causes of action, Jennifer's derivative claim for loss of consortium likewise could not survive the motions to dismiss.

We **AFFIRM** the dismissal of the Bellos' complaint.