[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11370
_____

D.C. Docket No. 0:16-cv-60667-WPD


MICHAEL SAPHIR,
1506 Meadows Blvd. Weston, FL 33327
by and through his legal guardians, Albert Saphir and Barbara Saphir,

Plaintiff - Appellant,

versus

BROWARD COUNTY PUBLIC SCHOOLS,

Defendant,

THE SCHOOL BOARD OF BROWARD COUNTY, FLORIDA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 31, 2018)

Before MARCUS and WILSON, Circuit Judges, and GRAHAM,[*] District Judge.

WILSON, Circuit Judge:

Michael Saphir, by and through his legal guardians Albert and Barbara Saphir,[1] appeals the district court's grant of summary judgment in favor of the School Board of Broward County, Florida.  The Saphirs brought claims under Title IX, as well as claims for negligence and negligent hiring, retention and supervision.  After careful review of the briefs and the record, and having the benefit of oral argument, we conclude that the district court did not err in granting summary judgment on all claims.

## I.    Background

In 2012, Michael was a minor living in Broward County, Florida, and attending Cypress Bay High School.  Michael suffers from a number of medical and developmental conditions, which have caused him to have "an academic and social developmental level that lag[s] [behind] his chronological age by several years."  Students with special education needs, like Michael, were placed in the school's Exceptional Student Education department (ESE).

On April 5, 2012, Michael and his parents, Albert and Barbara, went to a school-sponsored dance.  Nubia Lorenz—an ESE aide assigned to the classroom of

---

[*]Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

[1] Because we discuss the actions of three Saphir family members, we refer to them by their first names.

Sheryl Sugerman, an ESE teacher at Cypress Bay—also went to the dance. While waiting to enter the ballroom, Michael and his parents separated as Michael mingled with other students. About fifteen to twenty minutes later, Albert and Barbara saw Michael and Lorenz walk into the ballroom, "'hand-in-hand,' at times with their arms around each other."

After Albert and Barbara got into the ballroom some time later, they looked around for their son. They found Michael and Lorenz seated at a table different from the one assigned to the Saphirs. According to Albert and Barbara, Lorenz appeared intoxicated and was "all over" Michael, "putting her arm around him, hugging him." Despite protests from Lorenz, Michael's parents convinced Michael to move to their assigned table. But Lorenz refused to leave Michael's side and followed the Saphirs to their assigned table. There, she sat next to Michael and "clasp[ed] his hand, which was positioned on his leg." Lorenz also touched the side of her face to Michael's face.

Albert and Barbara asked Lorenz to "let go of [Michael's] hand" and "keep her face away from his," and also explained that Michael "was naive." But Lorenz stayed put. Another parent, Mark Sadek, then approached a school teacher helping with the event, Jorge Cruz. Sadek told Cruz that Lorenz "was at the wrong table and was doing something inappropriate." Sadek also told Cruz that Lorenz had sat on Michael's lap. On Cruz's request, Cruz's wife, another school employee, went

3

to the Saphirs' table and escorted Lorenz out of the ballroom.  Later that night, however, Albert and Barbara saw Lorenz dancing with Michael and saw her slap him "on the behind."  At that point, Albert and Barbara took Michael home.

On April 9, 2012, Albert and Barbara emailed Lonny Shapiro, the ESE department director, about Lorenz's behavior at the dance.  They asked that Lorenz no longer be allowed any contact with Michael and that it "be made clear to her that her behavior was completely out of line."  Shapiro forwarded the email to assistant principal Jeff Nelson, who was Shapiro's supervisor and the person responsible for investigating these types of allegations.  Nelson in turn discussed the allegations with Shapiro; the Cruzes; Albert; Lorenz; the school principal, Scott Neely; and another assistant principal, Kassandra Fried.  Ultimately, Lorenz "was told [she] would have no contact with Michael."  Other Cypress Bay staff members, including Sugerman and Neely, were made aware of this directive.  On April 11, Nelson also told Albert that Lorenz would be kept away from Michael and other children.  Beyond that, Nelson concluded "no additional action [was] required."

Michael and Lorenz had no physical or verbal contact after this, though he continued to see her around the school.  But that was not the end of things.  Sugerman and Bonnie Finfer, another ESE teacher at Cypress Bay, accused Michael of lying about what happened at the dance and told his parents and other

4

students he had lied.  Then, on January 17, 2014, Finfer told Michael to leave a physical education class because Lorenz was present, rather than making Lorenz leave.  Three days later, the Saphirs emailed Shapiro about it, saying that Michael should not miss out on class because of Lorenz.  Shapiro responded the next morning.  He said, "We have the situation worked out moving forward.  Michael will still get to participate.  [Lorenz] will not be there during that time.  Sorry for the confusion."  Later that day, Finfer accused Michael of taking a female ESE student into the boy's restroom with him.  Michael was later cleared of wrongdoing.  Michael also says Sugerman and Finfer physically hurt him and threatened his life.

On March 22, 2014, Michael told his private therapist that Lorenz had "grabbed his penis over his pants"[2] at the dance.  When the Saphirs told Cypress Bay administrators this, the Broward County School Board began a formal investigation and placed Lorenz on administrative leave.  Lorenz resigned before the School Board completed its investigation.

The Saphirs sued the School Board for violating Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.  They alleged that Lorenz sexually harassed Michael and that Michael was retaliated against for reporting her conduct.  The Saphirs also claimed violations of state law.  They alleged that the School

---

[2] It is not disputed that this is the first time Michael told anyone that Lorenz had touched his genitals.

Board was negligent in holding the dance and in its response to the allegations of sexual harassment. They also alleged that the School Board negligently hired, retained, and supervised Lorenz. The School Board moved for summary judgment on all claims, which the district court granted. This appeal followed.

## II.    Standard of Review

We review de novo a district court's grant of summary judgment, "taking all of the facts in the record and drawing all reasonable inferences in the light most favorable to the non-moving party." *Peppers v. Cobb Cty.*, 835 F.3d 1289, 1295 (11th Cir. 2016). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "may affirm for any reason supported by the record, even if not relied upon by the district court." *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015).

## III.    Discussion

A.    Sexual Harassment

A teacher's sexual harassment of a student constitutes actionable sex-based discrimination under Title IX. *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75, 112 S. Ct. 1028, 1037 (1992). Liability under "Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S. Ct. 1989, 1999

6

(1998) (quoting 20 U.S.C. § 1682).  Thus, to survive summary judgment, the plaintiff must show that an appropriate person "has actual notice of, and is deliberately indifferent to, the teacher's misconduct."  *Id.* at 277, 118 S. Ct. at 1993.

An "appropriate person" is "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf." *Id.*  The person "must be high enough up the chain-of-command that his acts constitute an official decision by the school district itself not to remedy the misconduct."  *Doe v. Sch. Bd. of Broward Cty.*, 604 F.3d 1248, 1255 (11th Cir. 2010) (internal quotation marks omitted).  Whether a particular school employee is an appropriate person is "necessarily a fact-based inquiry because officials' roles vary among school districts."  *Id.* at 1256 (internal quotation marks omitted). Thus, we look beyond title and position to the actual discretion and responsibility held by an official, and consider the type and number of corrective measures available to an official.  *See id.* at 1256–57.

"[S]chool administrators will only be deemed deliberately indifferent if their response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."  *Id*. at 1259 (internal quotation marks omitted).  "[W]here a school district has knowledge that its remedial action is inadequate and ineffective,

it is required to take reasonable action in light of those circumstances . . . ." *Id.* at 1261.

The Saphirs argue that Jorge Cruz was an appropriate person because he had authority to take corrective action to end the discrimination. In support, the Saphirs point to two facts: (1) Cruz's testimony that he did not need to ask or notify anyone before intervening with Lorenz at the dance; and (2) Nelson's testimony that Cruz had the authority to ask Lorenz to leave the dance if he thought her behavior was inappropriate. But those allegations are not sufficient to raise a genuine issue of material fact about whether Cruz was an appropriate person for purposes of reporting a Title IX violation. Though having the authority to take corrective action to end the discrimination is a necessary condition for finding that an official is an appropriate person, this authority alone is not sufficient. *See id.* at 1255. The Saphirs have failed to show that Cruz had the kind of responsibility, discretion, and authority—whether in the school hierarchy generally or over Lorenz specifically—such that he could be considered "high enough up the chain-of-command." We therefore affirm the district court's conclusion that Cruz was not an appropriate person as a matter of law.

8

The Saphirs also argue that Jeff Nelson was deliberately indifferent to Lorenz's sexual harassment of Michael.[3] They point out that Nelson did not interview other eyewitnesses, including Michael, or report the incident for formal investigation. The Saphirs also point to Nelson's failure to keep Lorenz away from other children by putting her on administrative leave. The Saphirs claim that, as a result of Nelson's actions, Michael was subjected to additional harassment because Michael (1) continued to see Lorenz around the school, (2) missed class time, and (3) was mistreated by Sugerman and Finfer.

While Nelson's response may have been imperfect, it did not amount to deliberate indifference. Within two days of receiving the email, Nelson conducted an informal investigation, which included interviewing and taking statements from the Cruzes and Lorenz, discussing the allegations and the appropriate response with three other administrators, and speaking with Albert. And Nelson took corrective action by directing Lorenz to stay away from Michael and telling other teachers and administrators about that directive. No one disputes that Lorenz had no verbal or physical contact with Michael after the dance.

Also, when the school was informed that its response might be inadequate or ineffective, it immediately took reasonable action. For instance, when the Saphirs

---

[3] The parties' briefs address only whether Nelson's conduct amounted to deliberate indifference. Our analysis therefore assumes that Nelson was an appropriate person with actual notice of Lorenz's misconduct.

9

notified the school that Michael missed class because of efforts to keep him and Lorenz separated, Shapiro responded within twenty-four hours that the situation had been corrected. Nothing in the record indicates that Michael missed class after that complaint.

Further, Nelson's failure to put Lorenz on administrative leave was not clearly unreasonable. This was the first complaint of its kind against Lorenz, and the known circumstances at the time did not include any allegations of genital contact. When allegations of genital contact were made, school officials immediately referred the Saphirs' complaint for a formal investigation and placed Lorenz on administrative leave.

Because the Saphirs cannot show that any appropriate person had actual notice of and was deliberately indifferent to Lorenz's misconduct, we affirm the grant of summary judgment on this claim.

B.    Retaliation

"Retaliation against a person because that person has complained of sex discrimination is [a] form of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 125 S. Ct. 1497, 1504 (2005). To prevail on a retaliation claim, Michael must prove that "the [School] Board retaliated against him *because* he complained of sex discrimination." *Id.* at 184, 125 S. Ct. at 1510. He must show that (1) he

10

reported the harassment; (2) he suffered an adverse action; and (3) there is a causal connection between the two. *See id.* Because the Saphirs seek to hold the School Board liable under Title IX, they must also show that the School Board knew about the report of Lorenz's harassment and that the School Board took the adverse action. *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640, 119 S. Ct. 1661, 1670 (1999); *Gebser*, 524 U.S. at 285, 118 S. Ct. at 1997 (stating that "it would 'frustrate the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of respondeat superior or constructive notice").

The Saphirs claim that in retaliation for the April 9 email, Sugerman and Finfer (1) accused Michael of lying about Lorenz's actions at the dance in front of his parents and other students, (2) falsely accused Michael of sexual misconduct with another student, and (3) made threats on Michael's life and physically accosted him. However, the Saphirs have not shown that the *School Board* took any adverse action against Michael. There is nothing in the record showing, for example, that these actions were directed by or done with the approval of officials who had the authority to act for the School Board. And the teachers' conduct was not of the kind that necessarily or typically requires the authority or approval of such officials. Neither was the retaliatory conduct so widespread at the school that

11

we could infer the implicit knowledge or approval by such officials.  We therefore affirm the district court's grant of summary judgment on this claim.

C.    Negligence

Florida schools have a duty to supervise students placed within their care. *Rupp v. Bryant*, 417 So. 2d 658, 666 (Fla. 1982).  "Florida courts have recognized a special relationship between schools and their students based upon the fact that a school functions at least partially in the place of parents during the school day and school-sponsored activities."  *Limones v. Sch. Dist. of Lee Cty.*, 161 So. 3d 384, 390 (Fla. 2015).  "This duty to supervise requires teachers and other applicable school employees to act with reasonable care under the circumstances."  *Id*.

The Saphirs argue that the School Board breached its duties to supervise the activities of students and to conduct a reasonable investigation in response to the complaint to Cruz.  However, they cannot show that the School Board failed to act with reasonable care under the circumstances.  The School Board had in place a comprehensive nondiscrimination policy which includes a prohibition on sexual harassment, and conducted annual training on this policy.  The dance was not organized in an unreasonably safe manner.  Lorenz's employment history was devoid of information that would have alerted the School Board that it needed to take special care with Lorenz.  And the School Board conducted two separate investigations into the accusations.  The evidence establishes that the School Board

12

used "the degree of care that a person of ordinary prudence, charged with the duties involved, would exercise under the same circumstances." *Wyke v. Polk Cty. Sch. Bd.*, 129 F.3d 560, 571 (11th Cir. 1997) (internal quotation marks omitted). We therefore affirm the district court's grant of summary judgment on this claim.

D.     Negligent Hiring, Retention, and Supervision

"Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." *Dep't of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. Dist. Ct. App. 2005).  The Saphirs "must allege facts sufficient to show that once an employer received actual or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action." *Id.*  "There must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee." *Id.* at 661; *see also Island City Flying Serv. v. Gen. Elec. Credit Corp.,* 585 So. 2d 274, 277 (Fla. 1991).

The Saphirs argue that Lorenz was retained and left unsupervised at the dance after the complaint was made to Cruz, allowing her to assault Michael, and that she continued to be retained in the same position at the school, allowing her to come in frequent contact with Michael, to his detriment.  But because there are no

13

allegations that any sexual harassment occurred after the dance, the Saphirs must show that the School Board received actual or constructive notice of problems with Lorenz's fitness before or during the dance, and that the School Board unreasonably failed to investigate or take corrective action.

The Saphirs cannot make such a showing. There is nothing in the record regarding any information in Lorenz's background that would have put the School Board on notice that she was unsuitable for employment. Notice to Cruz, who had no authority beyond asking Lorenz to leave the dance, was not sufficient notice to the School Board. And, as discussed above, when the Saphirs complained about Lorenz's behavior, the School Board took reasonable corrective action. We affirm the district court's grant of summary judgment on this claim.

## IV.    Conclusion

The district court did not err in granting summary judgment on all claims. **AFFIRMED**.